PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PEET, ) | |
| ) | CASE NO. 1:20CV2057 |
| Petitioner, ) | (1:19CR0149) |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| UNITED STATES OF AMERICA, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | [Resolving ECF No. 27] |

Pending is *Pro Se* Petitioner Christopher Peet's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 27).[1] The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons stated below, the § 2255 motion is denied.

## I. Background

On January 3, 2019, at 10:10 p.m., Cleveland Police Gang Impact Unit detectives were assigned to patrol the area of W. 65th Street and Lorain Avenue in Cleveland, Ohio. The area was known to gang unit detectives as being inundated with gang related crime, including firearm related violence and drug trafficking.

Detectives received information about drug trafficking activity in that vicinity from concerned citizens. While patrolling the 6900 block of Colgate Avenue, detectives, whom were operating a car equipped with an interior light bar and siren, observed three men standing on the

---

[1] Unless otherwise indicated, the docket references will be to the criminal case, not the related civil case, 1:20CV2057.

(1:20CV2057)

sidewalk. While observing their activity, a vehicle stopped in the middle of the street. One of the men approached the vehicle from the sidewalk. After a brief interaction with the occupants, the vehicle drove away.

It was the opinion of one of the detectives, based on his training and experience, that individuals who are involved in street level narcotics trafficking will often stand near streets or intersections and serve narcotics to people in vehicles as they pull up. This allows for quick and easy transactions. Individuals who traffic narcotics also have other individuals acting as a lookout and as protection while they conduct their activities. It was the detective's opinion that drug traffickers will often carry firearms for protection from rival dealers and law enforcement in order to protect their money and product.

Based on those insights, the detectives, whom were driving down the street, started to approach the three men who were standing on the sidewalk. The men attempted to flag the detectives' car down by waving their hands and yelling "yo." The detectives continued past the location and immediately notified other gang unit detectives patrolling the area, so they could assist.

As the detectives drove back to the area around Colgate Avenue, all three males separated from each other and began fleeing on foot. Two unknown males fled southbound through the adjacent driveways and into backyards and out of sight of detectives. The third male, identified as Petitioner, fled northbound across the street on Colgate Avenue. As Petitioner was running, the detectives activated their emergency lights and sirens on their vehicles. Additionally, detectives quickly exited their vehicles and identified themselves as police officers.

(1:20CV2057)

While pursuing him, detectives observed Petitioner reach into his waistband and remove a firearm, better described as a silver Smith & Wesson, model 5946 STNLS, 9mm semi-automatic pistol, bearing serial number TDN6812, which was loaded with 12 live rounds. Petitioner threw the firearm across a driveway and into a grassy area in the front yard of a family residence located at 6912 Colgate Avenue in an attempt to conceal it from law enforcement.

Petitioner then attempted to run through a fence to evade capture, but fell to the ground. He was read his *Miranda* rights and stated he understood. Petitioner declared that he did not have a gun and wanted to know why he was being arrested. A search of Petitioner's person revealed a felony amount of crack cocaine that was found in his hoodie pocket. The crack cocaine was inside of a sealed plastic bag and weighed .34 grams, which is a felony of the fifth degree in the state of Ohio.

In March 2019, a federal grand jury in the Northern District of Ohio returned a one-count Indictment (ECF No. 1) against Petitioner. He was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

Petitioner subsequently pleaded guilty to the Indictment (ECF No. 1) without a written Plea Agreement. *See* Transcript of Change of Plea Proceedings (ECF No. 32); Non-document Minutes of proceedings dated August 13, 2019. The Government's attorney summarized the elements of the offense during the Change of Plea hearing: (1) the defendant had been convicted of a crime punishable by imprisonment for more than one year and *had knowledge of said conviction*; (2) the defendant, following his conviction, knowingly possessed the firearm and/or ammunition specified in the Indictment (ECF No. 1); and, (3) that the specified firearm and/or

3

(1:20CV2057)

ammunition crossed a state line prior to the defendant's possession.  *See* ECF No. 32 at PageID #: 225.  Next, the following discussion was had:

> THE COURT:  Mr. Peet, is that true?
> THE DEFENDANT:  Yes.

ECF No. 32 at PageID #: 225.

The Government's attorney specifically stated during the Change of Plea hearing the factual basis, that "[o]n or about January 3, 2019, in the Northern District of Ohio, Eastern Division, [Petitioner], *knowing that he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year, . . . did possess in and affecting interstate commerce a firearm . . . and . . . ammunition, . . . and did so knowingly*."  ECF No. 32 at PageID #: 226-27 (emphasis added).  The Government's attorney also stated "[Petitioner] had previously been convicted of a felony offense punishable by more than one year imprisonment prior to his possession of the firearm and ammunition as specified in the indictment.  *The defendant knew of his status as a felon at the time of possession*."  ECF No. 32 at PageID #: 227 (emphasis added).  During the plea colloquy with the Court, Petitioner, while under oath, agreed with the factual basis spread on the record by the Government's attorney; and affirmed that he knowingly possessed a firearm and ammunition and did so while knowing he had been previously convicted of felony offenses:

> THE COURT:  . . . Mr. Peet, I know you were listening to that summary of what the government could prove up if the matter were to go to trial.
> Does that accurately reflect your behavior leading to the charge brought against you in the indictment, sir?
> THE DEFENDANT:  I don't understand.
> (Discussion held off the record between the defendant and Mr. Ivey.)
> THE DEFENDANT:  Yes.

4

(1:20CV2057)

> THE COURT: All right. I simply meant, is that what you did? Is that really what happened?
> THE DEFENDANT: Yes.

ECF No. 32 at PageID #: 228.

Petitioner affirmed in open court and under oath that he understood the rights he was waiving. Sworn statements made "in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner decided to plead guilty "because [he] was caught red-handed with it." ECF No. 32 at PageID #: 230. Petitioner entered a knowing, intelligent, and voluntary plea to being a felon in possession of a firearm and ammunition; including knowledge of his prohibited status. ECF No. 32 at PageID #: 228; 236.

The matter was set for sentencing before the undersigned on December 3, 2019. *See* Non-document Minutes of proceedings dated August 13, 2019. A final Presentence Investigation Report ("PSR") was filed in November 2019. Petitioner was subject to a maximum term of imprisonment of 10 years. The PSR calculated Petitioner's total offense level as 23, based on a 2-level enhancement under U.S.S.G. § 3C1.2 when "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," and a three-level reduction for acceptance of responsibility. With a criminal history category of V, the U.S. Pretrial & Probation Officer calculated Petitioner's advisory guideline range as 84 to 105 months' imprisonment.

In December 2019, the undersigned sentenced Petitioner to a term of 96 months. Petitioner was also sentenced to three years of supervised release. *See* Judgment in a Criminal

5

(1:20CV2057)

Case (ECF No. 25); Non-document Minutes of proceedings dated December 3, 2019.[2] Petitioner was advised of his right to appeal, however, he did not appeal to the United States Court of Appeals for the Sixth Circuit.

On September 8, 2020,[3] Petitioner filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 27). At the time, Petitioner was incarcerated in the Federal Correctional Institution in Bruceton Mills, West Virginia ("FCI Hazelton"). Petitioner sets forth one ground in support of the within motion. He argues the Court should vacate his conviction and sentence based on the June 2019 decision of the Supreme Court in *Rehaif v. United States*, 139 S.Ct. 2191 (2019).[4]

## II. Discussion

### A. Section 2255 Legal Standards

As stated by the United States Court of Appeals for the Sixth Circuit:

> . . .To obtain relief under § 2255, the movant "must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or

---

[2] According to the Bureau of Prisons ("BOP") website (http://www.bop.gov/inmateloc/) (last visited Sept. 21, 2023), Petitioner has a August 14, 2026 release date.

[3] Under Sixth Circuit precedent, the petition is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Even though the Court did not receive the petition until September 10, 2020, the postmarked envelope addressed to the Clerk's Office (ECF No. 27 at PageID #: 136) is dated September 8, 2020. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 Fed.Appx. 497, 498 n. 1 (6th Cir. 2006) (per curiam)).

[4] Petitioner contends that *Rehaif* applies retroactively to initial § 2255 motions on collateral review. *See* ECF No. 27 at PageID #: 134-35. That is correct. *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016).

(1:20CV2057)

> (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.' " *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). An evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see* 28 U.S.C. § 2255(b).

*Nix v. United States*, No. 20-6218, 2022 WL 815539, at *1 (6th Cir. March 15, 2022).

### B. Evidentiary Hearing

"Whe[n] a § 2255 motion and the files and records of the case conclusively show that the moving party is entitled to no relief, . . . no hearing of any kind is required[,]" including an evidentiary hearing. *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995) (citing *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984)). The Court finds that the within motion may be resolved without an evidentiary hearing because the files and records in this case conclusively show that Petitioner is not entitled to relief under § 2255. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

### C. Ground Asserted in the § 2255 Motion

#### 1. Petitioner's § 2255 motion is not timely filed.

The "1-year period of limitation" for a defendant to file a § 2255 motion begins to run from the latest of four triggering events. 28 U.S.C. § 2255(f). Section 2255(f), Title 18 states that the "1-year period of limitation" shall run from the latest of several dates, including "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3); *see Dodd v. United States*, 545 U.S. 353, 357 (2005) ("What Congress has said in [§ 2255(f)(3)] is clear: An applicant has one year from the date on which

7

(1:20CV2057)

the right he asserts was initially recognized by this Court."). The Government argues that Petitioner's motion is untimely under § 2255(f)(3) because it was not filed within one year of *Rehaif*. The Supreme Court decided *Rehaif* on June 21, 2019. Petitioner, however, filed his § 2255 motion on September 8, 2020, more than one year after the *Rehaif* decision. Accordingly, the § 2255 motion is untimely under § 2255(f)(3).

### 2. Petitioner has failed to demonstrate entitlement to equitable tolling.

"The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks and citation omitted). Equitable tolling is available "whe[n] a motion to vacate is filed after the one-year limitations period contained in 28 U.S.C. § 2255." *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008). "[T]he doctrine of equitable tolling is used sparingly by federal courts." *Robertson*, 624 F.3d at 784. "The party seeking equitable tolling bears the burden of proving he is entitled to it." *Id.*

A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner has not requested equitable tolling and the only effort he makes to show that his claim is not time-barred is to summarily state that there was "no access to legal library and or legal search engines such as [LexisNexis] as well as legal aid and typewriters" due to COVID-19. Reply (ECF No. 34) at PageID #: 258. But, he attaches to ECF No. 34 two Notices to the Inmate

8

(1:20CV2057)

Population at FCI Hazelton that state otherwise. *See* ECF No. 34-3 at PageID #: 264-66. The Notice dated April 1, 2020 states:

> \* \* \*
>
> Monday, Wednesday, and Friday, eight (8) cells will be unsecured for 30 minutes. During this time you will be afforded the opportunity to shower, and use the inmate telephone and computers. After 30 minutes the eight (8) cells will be secured and the next eight (8) cells will be unsecured for a period of 30 minutes. This rotation will continue until all cells are complete.
>
> \* \* \*
>
> A specified number of inmates will be placed on callouts daily to report to work in Food Service, Commissary, Laundry, Warehouse, and Power House. Upon returning to their assigned housing units these inmates will be afforded 30 minutes to shower, use the inmate telephone and computers on Monday, Wednesday, and Friday. . . .
>
> \* \* \*
>
> Inmates are encouraged to wipe phones and keyboards after each use. . . .
>
> \* \* \* \*

ECF No. 34-3 at PageID #: 264. The Notice dated June 12, 2020 states:

> \* \* \*
>
> Monday through Friday, inmates will be afforded showers, use of the inmate telephones and computers. This schedule will start Monday, June 15, 2020. Specifically, at approximately 6:30 a.m., 8 cells will be unsecured for 45 Minutes. During this time the inmates will have the opportunity to shower, and use the inmate telephone and computers. After 45 minutes, the 8 cells will be secured and the next 8 cells will be unsecured for a period of 45 minutes. This rotation will continue until all cells are complete. Inmates in Quarantine pending upcoming release will be afforded 45 minutes out of cell time Monday through Friday after non quarantine cells are complete. . . .
>
> \* \* \* \*

ECF No. 34-3 at PageID #: 265 (emphasis deleted).

Equitable tolling may also be appropriate "based on a credible showing of actual innocence." *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). Petitioner does not assert a claim of actual innocence. Rather, he asserts a lack of notice of one of the elements of the crime of felon in possession of a firearm and ammunition.

9

(1:20CV2057)

### 3. Even if the Court reached the merits of Petitioner's claim, it would fail.

As stated above, Petitioner's § 2255 motion presents one ground on which he claims that he is being held in violation of the Constitution, laws, or treaties of the United States. Assuming *arguendo* that Petitioner's claim is not time-barred, the ground does not merit an evidentiary hearing or relief under 28 U.S.C. § 2255 for the reasons set forth below.

#### a. The Court complied with *Rehaif*.

Petitioner argues he is actually innocent of being a felon in possession of a firearm and ammunition because he did not know his status as a felon at the time of his offense. To succeed on an 18 U.S.C. § 922(g)(1) conviction under *Rehaif*, the Government must prove that the defendant knew, at the time of his possession of the firearm and ammunition, that he had been previously convicted of a crime punishable by more than one year of imprisonment. The Supreme Court held that defendants do not violate § 922(g)(1) unless they *know* that they have been convicted of a crime punishable by more than one year in prison when they possess firearms. *Id.* at 2196. As the Supreme Court explained,

> The question here concerns the scope of the word "knowingly." Does it mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)? We hold that the word "knowingly" applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it.

*Id.* at 2194. *Rehaif* announced, for the first time, that the Government's burden to prove a § 922(g) offense includes showing that the defendant was aware of his "relevant status," meaning that he knew that he was "a felon, an alien unlawfully in this country, or the like." *Id.* The

10

(1:20CV2057)

government typically will not face much difficulty proving *Rehaif*'s knowledge element. *See id. at 2198*. Indeed, defendants commonly stipulate at trial to their status as felons so that the jury does not learn easy-to-prove (yet highly prejudicial) evidence about their past crimes. *See Old Chief v. United States*, 519 U.S. 172, 180-92 (1997). It is thus the rare case in which *Rehaif* will alter a defendant's calculus about whether to plead guilty or stand trial. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021).[5]

The Indictment (ECF No. 1) advised Petitioner of the knowledge element of his prohibited status. His admissions during the colloquy at the Change of Plea hearing also run directly contrary to his argument that he did not know his status as a felon at the time of his offense. Petitioner admitted that he had knowingly possessed the firearm and ammunition and had done so while knowing he had been convicted of the felony crimes of Domestic Violence, Attempted Felonious Assault, Drug Trafficking, Improper Discharge of a Firearm into a Habitation or School with Firearm Specification, and Felonious Assault. *See* ECF No. 32 at PageID #: 226-28.

### 4. Petitioner's claim is procedurally defaulted.

Nevertheless, Petitioner faces a different procedural obstacle to raising his *Rehaif* claim in a § 2255 motion. He did not assert this claim during the Change of Plea hearing, Sentencing Hearing or on appeal from his conviction. *Cf. Greer*, 141 S.Ct. at 2096-2100. His criminal case

---

[5] Petitioner cites *United States v. Gary*, 954 F.3d 194, 200-208 (4th Cir. 2020) (determined that a standalone *Rehaif* error satisfies plain error review by a Court of Appeals because such an error was structural, which per se affects a defendant's substantial rights) in support of his argument. *See* ECF No. 27 at PageID #: 133. In *Greer v. United States*, 141 S.Ct. 2090 (2021), the Supreme Court reversed the Fourth Circuit's judgment.

11

(1:20CV2057)

has thus become final. *See United States v. Frady*, 456 U.S. 152, 165 (1982). "Under the Supreme Court's procedural-default rule, [Petitioner]'s failure to raise his *Rehaif* claim during the "main event" (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion." *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 747 (1991); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)). Petitioner does not dispute that he defaulted his *Rehaif* claim. More importantly, he makes no argument that he can show "cause and prejudice" sufficient to excuse the default, or that he is actually innocent. Therefore, the procedural default bars the *Rehaif* claim.

The "actual innocence" exception requires Petitioner to show that it was "more likely than not that no reasonable juror would have convicted him" had the district court correctly instructed the jury and given the government the opportunity to adduce evidence of the omitted element. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Although in some sense every defendant convicted prior to *Rehaif* has not been adjudicated guilty of the 18 U.S.C. § 922(g) offense as it is now understood, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

Even if Petitioner asserted a claim of actual innocence, it would be meritless. Under *Rehaif*, to succeed on an 18 U.S.C. § 922(g)(1) conviction, the government must prove that the defendant knew, at the time of his possession of the firearm and ammunition, that he had been previously convicted of a crime punishable by more than one year of imprisonment. 139 S.Ct. at 2194. Here, before possessing a firearm and ammunition in 2019, Petitioner served more than one year in prison on three separate occasions. Specifically, in 1997, he was convicted of Felonious Assault in Cuyahoga County, Ohio Court of Common Pleas Case No. CR-97-349719-

12

(1:20CV2057)

ZA, and served three years in prison. Petitioner served an additional 10 years in prison in 2000 for Improper Discharge of a Firearm with Firearm Specification in Cuyahoga County, Ohio Court of Common Pleas Case No. CR-00-396060-ZA. Finally, in 2014, Petitioner was convicted of Attempted Felonious Assault in Cuyahoga County, Ohio Court of Common Pleas Case No. CR-14-583985-A, and Domestic Violence in Cuyahoga County, Ohio Court of Common Pleas Case No. CR-14-585435-A, and served three years in prison.

Petitioner therefore knew at the time of his illegal possession of a firearm and ammunition in the case at bar that he previously had been convicted of a crime punishable for a term of imprisonment of more than one year because he in fact served more than one year of imprisonment for the felony crimes listed above. Accordingly, Petitioner's actual innocence claim fails, and his claim is procedurally defaulted.

### III. Conclusion

Accordingly, the Court finds that Petitioner fails to demonstrate any ground on which he is entitled to relief under § 2255. Petitioner Christopher Peet's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 27) is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §2253(c); Fed. R. App. P. 22(b).

(1:20CV2057)

The Clerk is directed to issue a copy of this Memorandum of Opinion and Order by regular mail to Christopher Peet, #66644-060, USP Big Sandy, P.O. Box 2068, Inez, Kentucky 41224.[6]

IT IS SO ORDERED.

| September 21, 2023 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[6] According to the BOP website (http://www.bop.gov/inmateloc/) (last visited Sept. 21, 2023), Petitioner is now confined at U.S. Penitentiary Big Sandy.

Petitioner has failed to provide the court with his current address. It is the party, not the court, who bears the burden of apprising the court of any changes to his mailing address. *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) (citing *Casimir v. Sunrise Fin., Inc.*, 299 Fed.Appx. 591, 593 (7th Cir. 2008) (affirming district court's denial of Rule 60(b) motion when movants claimed due to house fire they did not receive mail informing them of court's entry of summary judgment); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("[A] litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit."); *Watsy v. Richards*, No. 86-1856, 1987 WL 37151, at *1 (6th Cir. April 20, 1987) (affirming dismissal for failure to prosecute when appellant failed to provide district court with "current address necessary to enable communication with him").

14